**David J. WALTON and Janice Walton, Appellants,**

v.

**Glenn ECKHART, Appellee.**

**No. 17924.**

United States Court of Appeals
Eighth Circuit.

Dec. 28, 1965.

Donald P. Lay, Omaha, Neb., Theo. Duffield, Des Moines, Iowa, for appellants.

William C. Hoffmann, Des Moines, Iowa, James D. Robertson, Marshalltown, Iowa, for appellee.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This appeal is from a judgment entered upon a jury verdict absolving all defendants of liability in a personal injury action stemming from a collision of auto-

mobiles in a smoke enveloped area on Highway 64, Marshall County, Iowa.

■ Jurisdiction, grounded upon diversity of citizenship, is established. The substantive law of Iowa controls.

Other parties were involved in the litigation but this appeal is limited to the plaintiffs, Janice and David Walton, and the defendant, Glenn Eckhart.

On April 12, 1963, defendant Eckhart, a tenant farmer, was engaged in spring plowing when a quantity of grass accumulated on his plow. The accumulated grass was removed and set afire upon the plowed portion of the ground. Eckhart watched the grass burn for four or five minutes and, when it reached the smoldering stage, resumed his plowing.

The fire was a "short" quarter mile from Highway 64 which intersects Eckhart's farm. Although the wind was moderate, the fire crossed the twenty to twenty-five foot strip of plowed ground, jumped a creek twenty feet wide and continued toward the highway. Because the land on the near side of the creek was wet and boggy, Eckhart was unable to plow in front of the fire and thus impede its progress. He noticed smoke reaching the highway but not in an amount sufficient to interfere with traffic. However, as the wind direction changed, the smoke completely enveloped the highway.

Plaintiff Janice Walton was driving east on Highway 64 with her husband and two sons. As she approached the Eckhart farm, her attention was attracted to the smoke on the highway, which, at first appearance, was only a wispy veil. Her visibility being only slightly impaired, plaintiff continued to drive although there was ample distance in which to stop. As plaintiff entered the smoky area, the density of the smoke increased to such an extent that she was unable to see even the hood of her car. Plaintiff momentarily stopped but, at the suggestion of her husband, proceeded forward at a reduced speed until she collided with an automobile driven by Harold Anderson. According to expert testimony, plaintiffs' car, at the time of collision, was at least a foot over the center line and into Anderson's lane.

After this initial collision, three other vehicles entered the smoky area and rear-ended Anderson's car, but no additional injuries were inflicted on plaintiffs, who had moved from the immediate scene.

■ For reversal, plaintiffs first assert that the facts did not justify the trial court's submission of an instruction on intervening efficient causation. We do not agree. The resolution of the question of proximate cause necessarily involved various factual aspects and so was a proper function of the jury. From the facts, the jury could have concluded (1) that Eckhart was not, under all the existing circumstances, guilty of any negligence; (2) that Eckhart was guilty of negligence constituting the sole proximate cause of the collision; (3) that Eckhart was guilty of negligence which concurred with negligence of others to constitute the proximate cause; (4) that Eckhart was negligent but that contributory negligence of plaintiffs precluded their recovery; (5) that the act of the plaintiffs or another, or the combination of their negligence, constituted an independent, intervening efficient cause insulating Eckhart's negligence.

■ Because the jury returned a general verdict, we have no way of knowing upon what theory the result was based. The record evidence, however, would have justified finding plaintiff guilty of negligence in restarting her car under conditions admittedly blinding her and violative of the Iowa rules of the road. Also, Anderson could have been found negligent as he admittedly entered the smoke area at a speed of sixty miles per hour, although the condition became obvious to him when he reached a distance of four hundred fifty feet outside the area.

■ In Iowa the jury determines both the existence of an intervening efficient cause and whether it has insulated the negligence of the defendant and replaced it as the proximate and actionable cause of the injury. See Johnson v. Baker, 254 Iowa 1077, 120 N.W.2d 502, 506 (1963)

and cases there cited; Blessing v. Welding, 226 Iowa 1178, 286 N.W. 436 (1939); McClure v. Richard, 225 Iowa 949, 282 N.W. 312 (1938).

This proposition was aptly expressed by Judge Graven in Chicago & North Western Ry. Co. v. Chicago, R. I. & P. R. R. Co., 179 F.Supp. 33, 55 (N.D.Ia. 1959):

"The whole trend of the recent decisions of the Iowa Supreme Court is to the effect that, save in exceptional cases, the question of causal connection between the negligence of a person and the injury of which it is claimed to be a proximate cause is one to be determined by the jury and not one to be dealt with as a question of law by the Court. That Court has in its recent decisions tended to emphasize that questions as to proximate cause, independent intervening negligence, and concurrent negligence are peculiarly questions for the trier of facts."

We conclude that the evidence in the instant case justified submission to the jury of the question of intervening efficient cause.

■■ A correlative question is presented by plaintiffs' challenge to the following sentence in Instruction No. 15:

"It is the contention of the defendant Eckhart that if the negligence, if any, of each and all of the drivers of the vehicles involved was not the sole proximate cause of the injury to the plaintiff, then it was a new and intervening cause which broke the chain of causation between the original negligence, if any, of the defendant Eckhart in creating a condition of smoke and the injuries to each of the plaintiffs. * * *"

This sentence merely states Eckhart's contention that if plaintiffs' injuries were not caused solely by the negligence of the other drivers, the negligence of such drivers was an independent intervening cause which broke the causal connection between any negligence on the part of the defendant and the collision.

Plaintiffs argue that the sentence is fatal because it did not instruct the jury that to insulate Eckhart's negligence, the intervening act or acts must constitute the sole proximate cause of plaintiffs' injuries. We agree that this sentence is not a complete definition as an intervening efficient cause which insulates the original actor must be (1) unforeseeable to a reasonably prudent person and (2) of such magnitude that the accident would not have occurred without its intervention. Other portions of Instruction No. 15, however (singularly without objection), covered concurrent negligence, defined "new and intervening cause" as well as "foreseeability." Additional instructions defined "negligence," "ordinary care," "contributory negligence," "burden of proof," and "proximate cause." And, in Instruction No. 20, the court told the jury that if they found Eckhart's negligence (if any) was a proximate cause of plaintiffs' injuries, they must return a verdict for plaintiffs unless plaintiffs were guilty of contributory negligence.

■ It could well be that the court might have changed the phraseology of the sentence in paragraph six of Instruction No. 15 if its attention had been directed to it. However, a careful reading of all thirty-four instructions convinces us that the trial court correctly stated the applicable law on the issues involved including the subject of intervening efficient causation. As a reviewing court, we must examine all of the court's charge in our determination of the validity of the instructions. We recently said in Jiffy Markets, Inc. v. Vogel, 340 F.2d 495, 500 (8th Cir. 1965):

"It is fundamental that in determining whether the instructions correctly stated the applicable law, we are required to consider them as a whole and not piecemeal."

■ Finally, we deal with the trial court's refusal to give plaintiffs' requested instructions requiring the jury to find Eckhart liable without regard to negligence. These instructions on absolute

liability were based upon an old Iowa criminal statute.[1]

There are but few Iowa cases dealing with the interpretation of this statute insofar as its applicability to civil proceedings is concerned, and all were decided before the turn of the century.

The earliest case is Conn v. May, 36 Iowa 241 (1873), which held a violation of the fire statute renders one "absolutely liable for the consequences, irrespective of the degree of diligence used to prevent its escape after being set out by him."

Next, the Iowa Supreme Court held in Brunell v. Hopkins, 42 Iowa 429 (1876), that it was error to give an instruction on absolute liability based on the statute if the fire was set out on a farm or cultivated field as such an act was not within the scope of the statute.[2]

The case of Thorburn v. Campbell, 80 Iowa 338, 45 N.W. 769 (1890), cited by plaintiffs, is inapposite as the facts show that a "destructive *prairie* fire was raging" (emphasis added). In Thorburn, judgment for the plaintiff was reversed for distinctions and exceptions not relevant here.

The latest expression is found in Ellsworth v. Ellingson, 96 Iowa 154, 64 N.W. 774 (1895), where the Iowa Supreme Court recognized exceptions in approving an instruction allowing recovery " * * if defendant set the fire *directly* to the grass or prairie, or if he built or set a fire in or to some other place or material, intending or purposely permitting it to communicate or extend to such grass or prairie land, then he is absolutely liable for all damages resulting therefrom * * *." (Emphasis added.)

In Ellsworth, defendants set fire in a hole for the purpose of smoking out wolves. When finished, defendants covered the fire and left. There was no evidence that fire was set directly to the grass or that there was any intention or purpose for the fire to spread to the prairie. Likewise, in the instant case, there is no evidence that Eckhart directly fired a prairie or that he intended the small clump fire to spread. Eckhart set fire to some grass on a plowed portion of the ground. He stayed for several minutes until the fire was out and the grass was smoldering before resuming his work. Upon noticing that the fire had started again, he went back in an effort to cut it off. The circumstances are strikingly similar to those in Ellsworth and we think from the rationalé of that

1. Iowa Code Ann. § 707.8 (1958) provides:
   "If any person, between the first day of September in any year and the first day of May following, set fire to, burn, or cause to be burned, any prairie or timbered land, and allow such fire to escape from his control, he shall be imprisoned in the county jail not more than thirty days, or be fined not exceeding one hundred dollars."

2. "It becomes necessary to inquire into the application of this statute and to determine whether the act of setting fire in a cultivated field is within its scope. The act forbidden and declared to be a misdemeanor is the setting of fire to and causing to be burned *prairie* or *timber* land. A cultivated field can be described by neither of the terms prairie nor timber. The first in its common acceptance is used to describe the plains of our State, which are without trees, before they are brought into cultivation, and the second the forests to be found here. A farm or cultivated field is never indicated by either term. The definitions of the words as given by lexicographers are in accord with their popular use.
   "The history of the legislation in question reveals the fact that it was intended to prevent the destruction of property resulting from prairie fires, the dangers and extent of which are familiar to the first settlers of a prairie country.
   "We conclude that the act of setting fires in a cultivated field is not within the letter or spirit of the statutes in question. The instruction above quoted, therefore, is erroneous, in not containing restrictions limiting the rule announced to the act of setting out fires in the prairies and timbered land and excluding from its scope the like act when done upon farms and cultivated fields. The evidence introduced by defendant as shown by the bill of exceptions required such a limitation to be put upon the language of the restriction." 42 Iowa 429, 431–432.

case defendant's negligence here was properly submitted to the jury.

We are convinced that the opinions of the Iowa Supreme Court in both Brunell and Ellsworth not only justified but compelled the District Court to reject, as it did, plaintiffs' requested instructions on absolute liability based on the statute.

For the reasons hereinabove stated, the judgment is affirmed.